OPINION OF THE COURT
RENDELL, Circuit Judge.
In this appeal from the District Court’s grant of summary judgment in favor of the defendant Norman Y. Mineta, Secretary of the Department of Transportation, and against plaintiff Gianfranco Caprio, plaintiff contends that he suffered discrimination based on his physical impairment, in violation of the Rehabilitation Act of 1973, §2 et seq., 29 U.S.C.A. § 701 et seq.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. We must decide two issues: (1) whether Caprio’s first Equal Employment Opportunity Commission (“EEOC”) charge was properly dismissed as untimely; and (2) whether the District Court correctly concluded that insufficient evidence supported Caprio’s claims that he was “disabled,” and that, based on this disability, the defendant discriminated against him. Finding no error in the District Court’s analysis, we will affirm the grant of summary judgment.
Caprio was employed as an air transportation systems specialist for the defendant in Newark, New Jersey in January 1999, when he suffered a medial-meniscus tear in his knee. After undergoing surgery Caprio abstained from his job, which in *826 volved climbing towers, on his doctor’s advice. During his recovery, Caprio sustained further injury to his knee, requiring a second operation in March 2000. Caprio was out of work from January 1999 to July 2000. In 1999, Caprio toured the Newark site on two occasions with either crutches or a cane.
In a letter to Caprio in June 2000, defendant proposed to remove plaintiff from his position because he was unavailable for duty. The letter noted that defendant had previously asked Caprio to indicate his anticipated date of return to duty, and that, in response, Caprio had transmitted a letter from his physician indicating that he was unable to work at that time.
Caprio returned to work in a limited duty capacity on July 6, 2000, as his doctor advised against his climbing towers or bending and squatting. Caprio had a new supervisor, Raguey Manseour, who had assumed that position while plaintiff was on leave. Caprio was assigned to sedentary work at defendant’s Airway Facilities Division in Garden City, Long Island (“Liberty SMO”), which resulted in a four-hour daily commute. One month later, Caprio returned to work at the Newark site without restrictions.
Caprio sought EEOC counseling in October 2000 and filed his first EEOC charge approximately three months later in January 2001. Caprio’s first charge focused on his transfer to Liberty SMO, and the lack of cooperation and administrative assistance provided to him by the defendant after his injury. The EEOC dismissed as untimely plaintiffs allegation that hostility toward his physical impairment prompted the transfer to Liberty SMO; however, the EEOC accepted for investigation plaintiffs allegations of discrimination and harassment related to his administrative difficulties in 1999 and 2000.
In April 2002, Caprio filed a second EEOC charge, alleging that defendant engaged in a continuing pattern and course of conduct of harassment, discrimination on the basis of his knee injury, and reprisal based on his prior EEOC complaint. Caprio alleged, among other things, that defendant discriminated against him regarding leave, overtime, and training, and engaged in intimidation and harassment.
The Administrative Law Judge consolidated Caprio’s EEOC charges and issued a summary disposition in favor of the defendant. The EEOC affirmed, and Caprio subsequently sought relief in the District Court, arguing that the defendant violated the Rehabilitation Act by (1) discriminating against him based upon his disability, (2) subjecting him to a hostile work environment based on his disability, and (3) retaliating against him for engaging in protected activity. The District Court granted summary judgment in favor of defendant. Caprio appealed.[1]
Caprio’s first contention is that the District Court erred in dismissing certain allegations in his first EEOC charge as untimely. Under the Rehabilitation Act, a plaintiff must seek EEOC counseling within 45 days of the “discrete” discriminatory act alleged. .Here, Caprio did not seek EEOC counseling until October 2000 — approximately three months after his assignment to Liberty SMO in July 2000. Ca- *827 prio makes two arguments in this regard: (1) that his temporary transfer to Liberty SMO did not constitute a “discrete” act triggering the 45-day consultation deadline; and (2) that he did not discover that his transfer was discriminatorily motivated until September 2000 — after the 45-day deadline had elapsed.
Caprio’s first argument is easily dispatched. Caprio’s transfer to Liberty SMO resulted in a substantial modification of his job responsibilities. Caprio’s prior position involved manual labor, including climbing towers; however, Caprio performed solely sedentary work at Liberty SMO. Further, the transfer to Liberty SMO increased his daily commute time to four hours. This additional travel time, which was uncompensated, represented a meaningful change from his prior job in Newark, New Jersey. Hence, Caprio’s transfer was at least as significant as other employment acts that we have deemed “discrete” adverse actions, including termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, and wrongful accusation. O’Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir.2006).[2] Moreover, Caprio based his first EEOC charge in large part on this transfer.
Caprio’s second contention — that his violation of the consultation requirement should be excused because he only discovered the discriminatory motive for his transfer after the deadline had elapsed — is also meritless. Federal regulations permit an extension of the 45-day time period, where a plaintiff “did not know and reasonably should not have ... known” that the discriminatory matter or personnel action occurred. 29 C.F.R. § 1614.105(a)(2). Here, Caprio maintains that he did not know that his transfer was discriminatorily motivated until a colleague informed him that other employees with mobility restrictions had been reassigned to positions in the Newark office, and had not been transferred to Liberty SMO.
Caprio, however, must demonstrate that his lack of awareness as to defendant’s actual motivation was reasonable. See McCants v. Glickman, 180 F.Supp.2d 35, 40 (D.D.C.2001) (rejecting extension of 45-day deadline where plaintiff had a “reasonable suspicion” of discriminatory motive based on facts known to him); see also Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 931 (5th Cir.1975) (noting that 90-day requirement to file EEOC charge begins to run when “facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff’); cf. Pacheco v. Rice, 966 F.2d 904, 906-907 (5th Cir.1992) (denying equitable tolling of the limitations period because a complainant has a duty of “diligent inquiry ... to proceed with a reasonable investigation in response to an adverse event”). Caprio does not contend that defendant prevented his access to information regarding how other *828 mobility-restricted employees were treated, or that such information was not reasonably discoverable. To the contrary, Caprio acknowledges that he was able to glean this information through an informal conversation with a co-worker. Moreover, in his appellate brief, Caprio focused on purported conduct in early July, including his transfer, as apparently perceived by him at the time, as the basis for his claim:
Before any termination was effectuated, Caprio returned to work, on July 6, 2000, in a limited duty capacity with the assistance of a walking cane. Upon his return to work, he was treated with disrespect, and was essentially cast aside. He was detailed to the Liberty SMO (Sector Management Office), located in Garden City, Long Island, and asked to perform menial and degrading work. Travel time to and from Liberty SMO was approximately four hours per day. While at Liberty SMO, he spent about two hours per day performing filing duties.
Appellant’s Br. at 4 (emphasis added). On these facts, we conclude that Caprio clearly suspected that his transfer to Liberty SMO was discriminatorily motivated. Because Caprio failed to consult with the EEOC within 45 days of his transfer to Liberty SMO, and because he is ineligible for an extension of the 45-day deadline under § 1614.105(a)(2), the District Court properly dismissed Caprio’s first discrimination complaint as untimely.
Next, Caprio contends that the District Court erred in dismissing his hostile work environment, discrimination, and retaliation claims. Fatal to these claims, in the District Court’s view, was Caprio’s failure to establish either that he was disabled (or regarded as disabled), or that his disability motivated the adverse actions alleged. On appeal, Caprio urges that he was both actually disabled and regarded as disabled, because the defendant was fully aware that he was unable to perform his prior job, which required climbing towers, and that he could not ambulate without a cane.
Even if Caprio were able to establish an actual or perceived disability under the Rehabilitation Act, he fails to establish causation — to identify facts sufficient to create a triable issue as to whether his impairment motivated the discriminatory acts complained of, including his transfer to Liberty SMO, the denial of his requests for leave for medical visits, and the denial of training opportunities requested. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir.2000) (requiring proof of a “causal link” between the employee’s protected activity and the employer’s adverse action); Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir.1998) (requiring proof that plaintiff suffered an adverse employment decision “as a result of discrimination”). Caprio fails to adduce any direct or indirect evidence that would support an inference that defendant’s actions' were motivated by discriminatory animus. To the contrary, the record discloses non-discriminatory reasons for the actions taken, including Ca-prio’s substantial delay in completing training, his failure to request leave in a timely manner, and his union activities. Because Caprio failed to adduce evidence sufficient for a reasonable jury to conclude that the discriminatory acts alleged were specifically motivated by hostility towards his physical impairment, summary judgment was proper.
For the foregoing reasons, we will AFFIRM the order of the District Court.

. The District Court had subject matter jurisdiction under 28 U.S.C. § 1331, and our jurisdiction is proper under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary. Summary judgment is only appropriate if there are no genuine issues of material fact, and the mov-ant is entitled to judgment as a matter of law. In reviewing the District Court's grant of summary judgment, we review the facts in the light most favorable to the nonmoving party. AT & T Corp. v. JMC Telecom, LLC, 470 F.3d 525, 530 (3d Cir.2006).

. In O'Connor, plaintiffs had alleged a variety of discriminatory acts, including:
that the department denied him a promotion, failed to expunge his disciplinary record, transferred him to a position under the command of a superior officer who was hostile to him, provided him with inadequate staff and resources, assigned him excessive work, changed his work schedule, filed unwarranted disciplinary complaints against him, failed to credit him with overtime, awarded him a medal but failed to invite his family to the ceremony, and failed to give sufficient commendations to his unit. O’Connor also alleges that he was subjected to threats and assaults by other officers.
Id. at 126 n. 1. Significantly, we concluded that “nearly all" of these acts constituted “discrete" adverse employment actions. Id. at 127.